UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

————————————————

In re:

LYLE C. KELLEY and THERESA M.
KELLEY,

               Debtors.

Case No. DM 11-90559
Chapter 7
Hon. Scott W. Dales

————————————————————/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                      Chief United States Bankruptcy Judge

Chapter 7 Trustee Kelly M. Hagan (the "Trustee")[1] filed an objection to the claim of David and Louise Williams (the "Objection," DN 79), challenging the secured status of their claim. Mr. and Mrs. Williams, *pro se*, filed a letter in response to the Objection asserting their rights as beneficiaries under a constructive trust purportedly imposed prepetition upon the property of Lyle C. Kelley and Theresa M. Kelley (the "Debtors") by Order dated November 2, 2010, entered in Michigan's 50th Circuit Court for the County of Chippewa (the "State Court Order"). The court held a hearing to consider the Objection and the creditors' response at which Trustee's counsel and Mr. Williams appeared. The court took the matter under advisement. For the following reasons the court will sustain the Objection.

The court has jurisdiction over the Debtors' case because the United States District Court has jurisdiction under 28 U.S.C. § 1334(a) and has referred the case and related proceedings to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and LCivR. 83.2(a) (W.D. Mich.). The matter is a core proceeding lying at the heart of the Bankruptcy Court's

---

[1] Ms. Hagan succeeded James W. Boyd as trustee after Mr. Boyd resigned that post in anticipation of his appointment as a judge of this court. For convenience, the term "Trustee" will refer to the person serving as trustee at the relevant time.

constitutional authority because it derives from the claims allowance process. Therefore, notwithstanding the concerns expressed in *Stern v. Marshall,* __ U.S. __, 131 S. Ct. 2594 (2011), and its progeny, the court has authority to resolve the controversy.

On June 12, 2012, the court held a hearing in Marquette, Michigan, to consider the Trustee's proposal to sell the estate's interest in an airplane hangar and related ground lease (the "Property") to the Economic Development Corporation of Chippewa County (the "EDC") for $70,000.00. The Trustee, United States Trustee, and the EDC appeared at the sale hearing through counsel; the Williamses did not appear, nor did they file any written opposition to the motion.

At the sale hearing, in response to the court's questions, the Trustee's counsel explained that the EDC and taxing authorities were the only entities claiming an interest in the Property. He and the counsel for the United States Trustee also explained the need to free the sale proceeds from any claims of the EDC, given the EDC's prepetition role in financing the Debtors' purchase of the Property. Satisfied that the only known entities claiming an interest in the Property either consented to the sale or would be paid from the proceeds, the court directed the Trustee's counsel to submit an order authorizing the Trustee (1) to sell the Property free and clear of liens and other interests, and (2) to hold the proceeds free of the EDC's lien or other interest.

On June 19, 2012, the court issued the Order Authorizing the Sale of Estate Property Pursuant to 11 U.S.C. Section 363 (the "Sale Order," DN 56) which approved the estate's sale of the Property to the EDC, and provided that the "[t]he Proceeds of the sale are free and clear of any liens, including any lien held by the EDC, except for certain tax liens that the estate has agreed to pay pursuant to the Agreement." *See* Sale Order at ¶ 4.

The court approved the sale free and clear of liens and other interests under § 363(f), based upon the representations made by the Trustee that, except for tax lien holders, he was aware of only one lien encumbering the Property, namely that of the purchaser, the EDC. The Sale Order, however, also included an atypical provision that the proceeds of the sale —not just the Property— would be free and clear of liens, to address the United States Trustee's concerns about the nature of the EDC's prepetition interest in the Property. Admittedly, the Sale Order in this respect was broader than necessary to accomplish this purpose, but at the time of entry no one (other than the Williamses) was aware of any other interest in the Property or its proceeds.

Relying on the preclusive effect of the Sale Order, the Trustee now challenges the secured status of the Williamses' claim, but not the amount or validity of the claim itself.

At the hearing to consider the Objection, the court inquired of Trustee's counsel whether he was aware of the Williamses' claim to the Property at the time of the sale. Trustee's counsel replied that in preparing for the sale, his office reviewed a title search in connection with the Property that did not reflect any liens or interests other than those recited in the sale motion.[2] He did report that in advance of filing the sale motion he had reviewed the claims register, but in the press of business he either did not perceive or did not recall the Williamses' claiming any interest as beneficiaries of the supposed constructive trust and equitable lien. Accordingly, the sale motion did not alert the court to the Williamses' interest.

The Trustee was not alone in failing to advise the court of the Williamses' interest in connection with the sale hearing: the Williamses did not file any written opposition and did not appear at the hearing, even though, as Mr. Williams conceded during the hearing on the

---

[2] The Williamses contend that they filed a notice of their equitable lien or constructive trust in Mackinaw County where the Debtors reside, rather than Chippewa County where the Property is situated. The State Court Order, however, contemplated that they would give "record notice" of their equitable interest by recording the order where appropriate.

Objection to his claim, the Trustee served the sale motion and the supplement upon them at their Drummond Island address. They did not respond to the sale motion or the supplement, evidently believing their rights were protected by the State Court Order imposing the constructive trust and equitable lien, and that the State Court Order had been properly recorded in order to give "record notice" of their rights. In short, Mr. Williams stated that he assumed the federal court would respect the State Court Order, evidently without any formal action on his or her part other than filing a proof of claim.[3]

Given counsel's representations in connection with the sale hearing and in the absence of any contrary assertions by or on behalf of the Williamses in connection with the proposed sale of the Property, the Sale Order provided that the proceeds would be free and clear of all liens and other interests. *See* Sale Order at p. 1, ¶ 4.  No one, including the Williamses, has appealed from, or otherwise sought relief from, the Sale Order.

This contested matter presents the tension between a number of well-settled principles and statutory provisions. One such principal honors the finality of court orders, such as the Sale Order, upon which the Trustee relies to invalidate the Williamses' interest in the proceeds of the Property. *See* Fed. R. Bankr. P. 9024 (making standards governing relief from judgment applicable to bankruptcy court orders).  Another time-honored principle holds, though not without exceptions, that a "lien" passes through bankruptcy. *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991); *Johnson v. Home State Bank,* 501 U.S. 78, 84 (1991); *Talbert v. City Mortgage Services (In re Talbert)*, 344 F.3d 555, 560 (6th Cir. 2003). Still another is the constitutional "Full Faith and Credit" doctrine, as extended to the federal courts by statute, suggesting that the

---

[3] This court regularly gives state court orders preclusive effect in accordance with 28 U.S.C. § 1738 but can do so only when such orders are called to its attention prior to the bankruptcy court's entry of its own order.

State Court Order should control this court's decision regarding the Williamses' interests. *See* U.S. Const. Art. IV § 1; 28 U.S.C. § 1738.

In this instance, the court can hardly reach a decision without upsetting the reliance interest that one party or the other placed in either the State Court Order or the Sale Order. In other words, the Williamses relied on the State Court Order imposing the constructive trust and the assumption that the federal courts would honor that order. The Trustee relied on the Sale Order which purported to free the proceeds of the EDC transaction and may have led Trustee's counsel to refrain from seeking to invalidate any other interests in the proceeds. Indeed, by now, the statute of limitations for asserting the Trustee's strong arm powers, unless subject to equitable tolling or other extension, has run. *See* 11 U.S.C. § 546(a). The court is left to make the best of a bad situation.

The court has decided to sustain the Objection for several reasons.  First, as noted above, the Sale Order, which has not been appealed, amended, or formally challenged in any way, supports the Trustee's view that the Williamses lost any interest they may have had in the Property or the proceeds.  Certainly, if the Williamses had participated in the sale hearing, the court would likely have preserved their claim to the proceeds, as the court typically does with proceeds of bankruptcy sales.  Indeed, a sale hearing is not the proper proceeding to determine the validity, priority or extent of an interest in property; that relief requires an "adversary proceeding," which incorporates greater procedural protections than a contested matter. *See* Fed R. Bankr. P. 7001(2).[4]  Had the Williamses asserted a claim to the Property in response to the sale motion, the court has no doubt that the order approving the sale would have preserved the issue, and that the Trustee would have promptly filed suit to avoid the Williamses' supposed

---

[4] Similarly, a claim objection is usually not the appropriate procedure for challenging a creditor's secured status, Fed. R. Bankr. P. 3007(b), but the Williamses have not opposed the Trustee's Objection on this ground and, strictly speaking, the Trustee contends that the Sale Order has already divested them of their interest.

rights as beneficiaries of a constructive trust or equitable lien.  Instead, as the Williamses slept on their rights in federal court,[5] the Trustee continued to administer the case while the limitations period in § 546(a)(1)(A) for avoiding unperfected liens under § 544(a) ran and, on September 7, 2013, expired.  The court infers that the Williamses may have exhausted their resources, and probably themselves, in fighting the Debtors in state court, but this does not immunize them from the consequences of inaction in federal court.

Perhaps the Williamses might have sought relief from the Sale Order under Federal Rule of Civil Procedure 60(b), which could have afforded them and the court an opportunity to consider the due process concerns related to the Sale Order's effect on their claim, but even so a party seeking relief under that rule must make a motion "within a reasonable time," and in some circumstances within a year after entry of the order. *See* Fed. R. Civ. P. 60(c)(1) (incorporated into bankruptcy practice by Fed. R. Bankr. P. 9024).  As the Supreme Court recently noted, Rule 60(b) "does not provide a license for litigants to sleep on their rights." *United Student Aid Funds, Inc. v. Espinosa*,  559 U.S. 260, 275 (2010) (confirmation order discharged student loan debt in absence of creditor's objection even though such relief ordinarily requires formality of an adversary proceeding).

The fact that the Williamses mistakenly assumed it was unnecessary for them to take action to protect their rights as secured creditors would not necessarily change the result.  *In re Kim*, 384 B.R. 188, 190 (Bankr. N.D. Ohio 2007) (court holds, after considering standards under

---

[5] In addition to remaining mute in response to the sale motion, the Williamses did not assert any rights as secured party or constructive trust beneficiaries in their occasional correspondence with the court.  For example, in a letter objecting to Trustee's counsel's fee petition —sent several months before the expiration of the § 546 limitation period— the Williamses did not claim entitlement to the entire $70,000.00 in sale proceeds (as they might have done as constructive trust beneficiaries or holders of an equitable lien), and in fact suggested that all creditors would receive a higher "percentage" of the sale proceeds if the attorney fees were not so high.  *See* Letter dated May 17, 2013 from David and Louise Williams to Hon. James D. Gregg (DN 68). On December 30, 2011 —a few months before the Trustee filed the sale motion—the Williamses penned a letter that never mentioned their lien or constructive trust rights. *See* Letter dated December 30, 2011 from David and Louise Williams to Hon. James D. Gregg (DN 32).

Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b), that secured party who mistakenly believed it was unnecessary to object to plan in order to protect its collateral is bound by final, unappealed order). Accordingly, although the Williamses have not filed such a motion, it is not clear that they would have been successful at this point even if they had properly asserted their rights.

In reaching this decision, the court is mindful that that the Williamses are representing themselves, whether by choice or necessity, and may not have appreciated the impact of the court's rules —rules that apply equally to the represented and unrepresented. The court has also carefully considered the effect of its decision on the State Court Order, which was clearly premised on equitable principles, but entered *ex parte* and provisionally, in the first days of the litigation between the Williamses and the Debtors, based only upon a supposed verification of the allegations in the complaint. The court is not certain whether the constructive trust or equitable lien remedies ever became final. Indeed, one of the informal letters from the Williamses reports that the underlying State Court lawsuit was "dismissed," (DN 32), suggesting that the equitable remedies the State Court provisionally granted never ripened into final relief. Moreover, the *ex parte* nature of the imposition of the constructive trust or equitable lien may itself make the equitable remedies the Williamses now assert vulnerable on due process grounds. Regardless, because the Williamses did not raise the State Court Order in opposition to the sale motion, the court had no occasion to consider the impact of the Full Faith and Credit statute —an issue that should have been asserted in response to the motion or on direct appeal, not collaterally. And, their delay in asserting their interest in the Property or proceeds until after the § 546 limitation period has run makes it inequitable to ignore the Sale Order upon which the Trustee has relied. Accordingly, the court will sustain the Trustee's Objection based on the Sale Order, principles of finality, and estoppel.

Finally, the court notes that the Objection is premised entirely on the Sale Order, and that the Sale Order does not purport to affect the Williamses' rights in property other than the Property or the sale proceeds.  Therefore, the court will sustain the Objection only to the extent it applies to the Williamses' claim to the Property or sale proceeds.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Objection (DN 79) is SUSTAINED to the extent it applies to the Property or the sale proceeds derived from the Property, and OVERRULED with respect to the balance of the relief requested in the Objection.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon David Williams, Louise Williams, Lyle C. Kelley, Theresa M. Kelley, Darrell R. Dettmann, Esq., Jeremy J. Nastoff, Esq., Kelly M. Hagan, Esq., and the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

**Dated July 29, 2014**



Scott W. Dales
United States Bankruptcy Judge